UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TUSCOLA WIND III, LLC,

                    Plaintiff,                      Case No. 17-cv-11025

v                                       Honorable Thomas L. Ludington

ELLINGTON TOWNSHIP, et al,

                    Defendants.

_____/

## ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT ONE

On March 31, 2017, Plaintiff Tuscola Wind III, LLC, ("Tuscola") filed a complaint naming the Ellington Township ("Township") and Ellington Township Board ("Board") as Defendants. ECF No. 1. Tuscola is challenging the Board's decision to institute a moratorium on consideration of all wind energy projects in the Township. On November 2, 2017, Tuscola filed a motion for judgment on the pleadings as to Count One of the complaint, which asserts that Defendants violated the Zoning Enabling Act, M.C. L. 125.3101 *et seq.*, when the Board enacted the moratorium by resolution. For the following reasons, that motion will be granted.

## I.

For clarity, Plaintiff's allegations will be summarized, and then the factual allegations which Defendants admit will be identified. Tuscola Wind III, LLC, is a Delaware limited liability company which is owned by NextEra Energy Resources, LLC. Comp. at 3, 4. NextEra is "the largest generator of wind energy in the United States." *Id.* at 4. NextEra has previously constructed two wind energy centers in Tuscola County and Bay County, Michigan, named the Tuscola Wind Energy Centers I and II. *Id.* at 4–5. In 2015, Tuscola "proposed to construct the Tuscola III Wind

Energy Center . . . in Tuscola County Michigan." *Id.* at 5. That project is the source of the current litigation.[1] The proposed Tuscola III Wind Energy Center would include fifty-five wind turbines, with nineteen of those turbines to be sited in Ellington Township. *Id.* at 5–6.

## A.

Prior to 2014, the Township's wind ordinance was half a page long. *Id.* at 7. In anticipation of the Tuscola III Wind Energy Center Project, the Ellington Township Board "determined that it needed to re-examine its wind ordinance." *Id.* The Board hired a third-party consultant, the Spicer Group, to assist in revising the ordinance. *Id.* On September 30, 2014, the Planning Commission held a hearing on the proposed amendments and recommended adoption. Several months later, the Board unanimously adopted the amended wind ordinance, which "remains in effect today." *Id.* at 8. This updated ordinance is "much stricter than its predecessor," and includes sound pressure limits, setback requirements, and shadow flicker limits. *Id.* Pursuant to the current ordinance, "utility grid wind energy systems are considered a Special Land Use, requiring the Planning Commission to approve an application for a Special Land Use Permit." *Id.* (citing Ordinance at § 502(M)(4), Ex. 2).

After Tuscola formally proposed the project, and approximately a year after the wind ordinance was amended, "a group [named the Ellington-Almer Township Concerned Citizens Group] was formed to oppose the Project and to pressure the Township to enact a much more restrictive wind ordinance." *Id.* According to Tuscola, the anti-wind Group has connections with a larger group, called the Interstate Informed Citizens Coalition, that "opposes wind as a matter of policy and lobbies against wind energy in Ohio and Michigan." *Id.* at 9. The Group contends in

---

[1] The same project is also the source of a suit brought by Tuscola against the Almer County Township and Township Board. *See Tuscola Wind III, LLC, v. Almer Charter Township*, et al, Case No. 17-cv-10497. That case is also pending before this Court.

public that it is "pro-reasonable regulation" of wind energy, but Tuscola believes that the Group is fundamentally opposed to wind energy. *Id.* Tuscola also believes that the interstate Coalition coaches local anti-wind groups on "tactics of intimidation, threats of lawsuits, referenda, and recalls . . . in an effort to prevent the development of wind projects." *Id.* at 10.

Among other tactics, the local anti-wind Group decided to run some of its members as candidates for the Township Board. *Id.* Four members of the Group ran in the 2016 election, and all four were elected. *Id.* The members of the anti-wind Group have provided contentious and confrontational opposition to pro-wind advocates in the community. Tuscola alleges that these tactics have included "threats and intimidation." *Id.* at 11.

In terms of policy, members of the anti-wind Group have repeatedly "stated in public meetings their belief that the Township should" amend its wind ordinance. *Id.* Specifically, they believe that the Township should "model its setback and sound requirements to those found in the recently amended wind ordinance in neighboring Huron County." *Id.*

**B.**

In early 2016, the anti-wind Group began lobbying for the Board "to pass a moratorium on the development of wind energy systems in the Township" in order to provide the Board time to amend the wind ordinance. *Id.* at 12. The Township Board held a meeting on April 4, 2016, to consider enacting a 120 day moratorium on consideration of applications for approval to build wind energy systems. The proposed moratorium contained the following conditions for its termination: "if either (a) the Board adopted a 'sufficient' regulation to protect the health, safety, and welfare of the citizens; or (b) the Planning Commission recommended that no additional amendments were necessary to protect the health, safety, and welfare of the citizens." *Id.* at 12–13 (citing First Moratorium Res., ECF No. 1, Ex. 6). The moratorium was enacted.

While the moratorium was in place, the Planning Commission considered several amendments to the wind ordinance which the anti-wind group supported. "Ultimately, after reviewing the proposed amendments to the Ordinance and studying the impacts of the proposed turbines, the Planning Commission did not recommend any changes to the Ordinance, and the First Moratorium was lifted." *Id.* at 13.

## C.

After the first moratorium ended, Tuscola submitted a Special Land Use Permit ("SLUP") application seeking permission to construct the wind energy project. *Id.* at 14. According to Tuscola, the SLUP application was designed to "far exceed[] the Ordinance's sound and setback requirements." *Id.* Tuscola "expended substantial time and money in preparing its SLUP application" and additionally "supplied the Township with $65,000.00 to fund an escrow account so the Township can pay its consultants and other service providers to review the materials." *Id.* at 15.

On October 10, 2016, the Township's Planning Commission "scheduled a public hearing to be held on December 5, 2016, to consider" the SLUP application. *Id.* Earlier dates were considered, but members of the anti-wind group "strongly encouraged the Planning Commission to set the public hearing for a date after the new Board was set to take office on November 20, 2016." *Id.*

## D.

On November 8, 2016, four new Board members were elected to the Ellington Township Board. As explained above, all four were members of the anti-wind group. *Id.* at 16. The new Board members took office on November 20, 2016. On the same day, the Almer Township Board "issued a notice for a special meeting to be held on Tuesday, November 22, 2016." *Id.* Early the

next morning, the Ellington Township Board "issued a notice for a special meeting to be held 90 minutes earlier on the same date and at the same location." *Id.* Tuscola believes that "both boards reserved the [location for the special meetings] before they officially took office." *Id.*

At the November 22, 2016, special meeting, the Ellington Township Board's first action was to hire an attorney—Michael Homier of Foster Swift—to advise the Board on matters regarding the wind ordinance and SLUP application. *Id.* at 17. Mr. Homier "indicated that he was informed that 'the Township may desire to look at its WEC ordinance' and that he had drafted a 12 month moratorium, with the option to renew, for Board review." *Id.* at 18. The second moratorium was approved by a four to one vote, with all four new Board members voting for the moratorium. *See id.* (citing Sec. Moratorium Res., ECF No. 1, Ex. 9). The second moratorium was "passed by the Board, ostensibly pursuant to its 'police power,' and according to the resolution, the purpose of the Second Moratorium is to protect the 'health, safety, and welfare' of Township residents." *Id.* (citing Sec. Moratorium Res., ECF No. 1, Ex. 9).

"As a result of the Second Moratorium, the Planning Commission has been precluded from considering or deciding on Tuscola Wind III's SLUP Application." *Id.* at 19. Tuscola argues that "Defendants are not in the process of developing a new zoning ordinance related to the regulation of wind energy." *Id.* at 20. Further, Tuscola asserts that "a zoning ordinance may not be suspended or amended by resolution." *Id.* at 21. For these reasons, Tuscola believes that the second moratorium violates the Zoning Enabling Act.

**E.**

In their answer to the complaint, Defendants deny most of Plaintiff's factual allegations. In particular, Defendants deny Plaintiff's attempts to attribute certain purposes or intentions to

actions by Defendants or members of the anti-wind group. Defendants do, however, admit certain allegations.

Specifically, Defendants admit that the Board amended the wind ordinance on January 13, 2015, and that the ordinance as amended remains in effect today. Ans. at 8, ECF No. 12. Defendants also admit that "four of the five current members of the Township Board were newly elected in the November 8, 2016 general election." *Id.* at 2. There is likewise no dispute that the Township enacted a moratorium via resolution soon after the election. *Id.* Defendants admit that Tuscola has submitted a SLUP application and that "Plaintiff supplied Defendants with $65,000 to fund an escrow account for consultants and other service providers to review materials." *Id.* at 17. Finally, Defendants admit that new Planning Commission members have been appointed.

But Defendants deny all allegations "which concern nonparties," which attempt to "characterize[] or interpret[] the contents of the Ordinance" or resolutions, or which contain conclusions of law. *See, e.g.*, *id.* at 9, 14, 22.

## II.

Tuscola has filed a motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). "The standard of review for a [motion for] judgment on the pleadings [under Rule 12(c)] is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th

Cir. 1999). A motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991). *See also JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

## III.

Tuscola is seeking judgment on the pleadings for Count One of the complaint, which asserts that the second moratorium violates the Zoning Enabling Act. Pursuant to the standard articulated, Tuscola is entitled to judgment only if, considering all uncontested facts, there is not a material issue of fact regarding whether the moratorium violated Michigan law.

A federal court adjudicating claims premised on state law must "apply state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). "If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data." *Id.* The decisions of state appellate courts should not "'be disregarded unless [the court is] presented with persuasive data that the Michigan Supreme Court would decide otherwise.'" *Id.* (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir.1995)).

## A.

Tuscola argues that the Ellington Township Board did not have authority to suspend the operation of the zoning ordinance by passing a moratorium via resolution. In response, Defendants argue that the moratorium resolution did not "suspend or nullify the Zoning Ordinance." Def. Resp. Br. at 9, ECF No. 19.

"The Constitution of the State confers no grant of police power of zoning directly upon cities." *Krajenke Buick Sales v. Kopkowski*, 322 Mich. 250, 254 (1948). Accordingly, "a local unit of government must be specifically authorized by the Legislature to exercise any zoning authority." *Whitman v. Galien Twp.*, 288 Mich. App. 672, 679 (2010) (citing *Krajenke Buick Sales*, 322 Mich. at 254). The Michigan Legislature has empowered local municipalities to establish zoning regulation through the Zoning Enabling Act, M.C.L. 125.3202(1). *See id.* ("In 2006, the Legislature consolidated the three separate zoning enabling acts for cities and villages, townships, and counties into the MZEA. The MZEA governs the creation and administration of local zoning ordinances.").

The Michigan legislature has also provided local municipalities the power to "adopt ordinances regulating the public health, safety, and general welfare of persons and property." M.C.L. § 41.181. *See also Square Lake Hills Condo. Ass'n v. Bloomfield Twp.*, 437 Mich. 310, 320 (1991). These two independent grants of authority, however, do not overlap. "A local government may not avoid the substantive and procedural limitations of a zoning enabling act by merely claiming that a zoning ordinance is valid as an enactment pursuant to the general police power." *Little Mack Entm't II, Inc. v. Twp. of Marengo*, 625 F. Supp. 2d 570, 574 (W.D. Mich. 2008) (citing *Krajenke Buick Sales*, 322 Mich. 250 (1948)). *See also Square Lake Hills Condo. Ass'n*, 437 Mich. 310, 323 (distinguishing between municipality authority to use its police power to regulate "activity" and zoning ordinance power to regulate "uses" of land);[2] *id.* at 345 (Levin, J., dissenting) ("[U]nless the procedural requirements set forth in a zoning enabling act for the

---

[2] The primary opinion in *Square Lake* (written by Justice Riley) did not garner a majority of the Michigan Supreme Court and so the opinion is not binding precedent. *See Nat. Aggregates Corp. v. Brighton Twp.*, 213 Mich. App. 287, 297, 539 N.W.2d 761, 767 (1995). However, the Michigan Courts of Appeal have generally adopted Justice Riley's rationale. *See id.*; *Forest Hill Energy-Fowler Farms, L.L.C. v. Twp. of Bengal*, No. 319134, 2014 WL 6861254, at *5 (Mich. Ct. App. Dec. 4, 2014).

enactment of a zoning ordinance are 'strictly adhered' to, the enactment is not valid") (collecting sources); *Forest Hill Energy-Fowler Farms, L.L.C. v. Twp. of Bengal*, No. 319134, 2014 WL 6861254, at *5 (Mich. Ct. App. Dec. 4, 2014) (adopting "use" versus "activity" distinction); *Nat. Aggregates Corp. v. Brighton Twp.*, 213 Mich. App. 287, 300, 539 N.W.2d 761, 768 (1995) (same).

This conclusion is the logical extension of the long-standing rule that municipalities can enact zoning ordinances only by strictly complying with the requirements of the statute which authorizes that exercise of power.[3] *See Korash v. City of Livonia*, 388 Mich. 737, 746 (1972) ("Indeed, this Court has consistently held that the procedures outlined in the Zoning Enabling Act must be strictly adhereed to. . . . Therefore, the amendment to the ordinance, having been enacted by a procedure different from and contrary to the procedure required by the Zoning Enabling Act, is invalid."); *Stevens v. City of Madison Heights*, 358 Mich. 90, 93 (1959) ("The statute spells out a certain procedure that must be followed to enact a zoning ordinance; this procedure admittedly was not followed by the city in this case; and therefore the ordinance in question is invalid."); *Krajenke Buick Sales*, 322 Mich. 250 (1948) (same); *Whitman*, 288 Mich. App. at 679 ("A local unit of government may regulate land use through zoning only to the limited extent authorized by [zoning enabling] legislation.").

**B.**

Accordingly, the initial question is whether the second moratorium amended or enacted a zoning ordinance. If so, then the second moratorium is valid only if enacted pursuant to the ZEA.

---

[3] This said, the Michigan Constitution also provides that the "provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution." Mich. Const. Art 7, § 34. *See also Square Lake Hills Condo. Ass'n*, 437 Mich. at 319.

If not, then the second moratorium is valid if it was a permissible use of the Ellington Township's police power.

### 1.

"A zoning ordinance is defined as an ordinance which regulates the use of land and buildings according to districts, areas, or locations." *Square Lake Hills Condo.*, 437 Mich. at 323 (Riley, J). *See also Forest Hill Energy-Fowler Farms, L.L.C. v. Twp. of Bengal*, No. 319134, 2014 WL 6861254, at *5 (Mich. Ct. App. Dec. 4, 2014) (adopting Justice Riley's formulation); *Nat. Aggregates Corp.*, 213 Mich. App. at 300; *Forest Hill Energy-Fowler Farms*, 2014 WL 6861254, at *5. "The question whether or not a particular ordinance is a zoning ordinance may be determined by a consideration of the substance of its provisions and terms, and its relation to the general plan of zoning in the city." *Id.* "Zoning ordinances regulate land uses, while regulatory ordinances regulate activities." *City of Bloomfield Hills v. Froling*, No. 288766, 2010 WL 1687676, at *4 (Mich. Ct. App. Apr. 27, 2010).

Regulation of wind energy systems clearly involves the regulation of land, not the regulation of activities. *See Forest Hill Energy-Fowler Farms*, 2014 WL 6861254, at *5 ("The construction of an infrastructure of wind turbines as part of a wind energy system is not merely an activity on land, but rather relates to a permanent land use."). Defendants attempt to distinguish *Forest Hill*, arguing that "[t]he Moratorium served only to pause the issuance of permits, and did not change the substance of the Zoning Ordinance. It is the Zoning Ordinance, not the Moratorium, that regulates the 'use' of the land." Def. Resp. Br. at 21. Thus, Defendants draw a distinction between "substantive" zoning regulations and requirements—which they admit must be enacted pursuant to the ZEA—and "temporary moratoria" which merely pause the issuance of permits. *See id.* at 20–21.

Defendants' argument is counterintuitive. If Defendants admit that the ordinance which establishes procedures for SLUP applications for wind energy systems is a zoning ordinance (which appears self-evident), then it seems to follow that a suspension of those procedures is a substantive change. Prior to the moratorium, SLUP applications for approval of wind energy systems were permitted and the Board was required to consider them; during the moratorium, neither of those things were true. In other words, the moratorium prevented any use of land for a wind energy system in the Township, albeit temporarily.

Defendants argue that there is a distinction between "suspending" an ordinance and instituting a "moratorium." *See* Def. Resp. Br. at 10. The only legal authority which Defendants cite in support of that assertion is the Black's Law Dictionary definition of "moratorium." *See id.* & n.34 (citing Black's Law Dictionary, 6th Ed.) (published in 1990). According to Defendants, the Sixth Edition defines "moratorium" as including "[d]elay or postponement of a legal obligation or an action or proceeding." *Id.* The Tenth Edition of the Black's Law Dictionary, published in 2014, defines "moratorium" as "[a]n authorized postponement . . . in the deadline for paying a debt or performing an obligation. . . . The suspension of a specific activity." The Tenth Edition defines "suspend" as follows: "To interrupt; postpone; defer."

There is no meaningful legal distinction between these terms. As Tuscola points out, the definition for "moratorium" includes the words "postpone[]" and "suspen[d]." The definition for "suspend" includes the word "postpone." Given the interrelationship between these definitions, Defendants' assertion that there is a meaningful distinction between suspending an ordinance and imposing a moratorium on that ordinance has no merit. *See also Deighton v. City Council of Colorado Springs*, 902 P.2d 426, 429 (Colo. App. 1994) ("[T]he moratoria changed the administrative operation of the zoning ordinance as effectively as if it had been amended or

repealed. . . . Whether categorized as a suspension of the zoning ordinance, a temporary amendment, a temporary reclassification, or a temporary setting aside of the ordinance as to new adult uses, these actions had the practical effect of changing the rules temporarily pending a study which was expected to result in a permanent change.") (internal citations omitted).

The only distinction between the moratorium and an ordinance repealing the existing wind energy ordinance is the fact that the moratorium had a time limit. The court is unable to locate any legal authority from Michigan which suggests that a temporary limitation on the use of land does not constitute zoning. To the contrary, the Supreme Court of Michigan has held that a "temporary measure" adopted by a city council and designed to allow the issuance of building permits until the zoning ordinance was adopted" was "void" because it did not comply with requirements of the enabling act. *Krajenke*, 322 Mich. at 253, 255.

The only potentially contradictory Michigan case which Defendants identify is *Heritage Hill Ass'n, Inc. v. City of Grand Rapids*. 48 Mich. App. 765, 768 (1973). In that case, the Grand Rapids Zoning Ordinance placed various restrictions on land use, but did "not prevent the demolition of a building after land owners obtain[] a permit to do so." *Id.* at 766–67. The suit arose after the owner of historic properties sought to demolish certain structures. "In order to preserve the historical and architectural integrity of the [Heritage Hill section of Grand Rapids], the city's building code was amended to" prohibit building officials from accepting any applications for a building permit which would require demolition of any structure. *Id.* at 767.

The zoning appeals board eventually granted an exception for the landowner to demolish the buildings, and suit was brought. On appeal, the Michigan Court of Appeals held that "the amendment to the building code is not in the nature of a zoning ordinance which regulates land uses in a particular district. The amended building code in the case at bar did not alter the

provisions of the Grand Rapids Zoning Ordinance but rather only placed a moratorium on the issuance of building permits in a particular district of the city for a reasonably limited time." *Id.* at 768. This dicta provides minimal guidance in the current dispute. For one, the amendment in *Heritage Hill* did not change or suspend any part of the zoning ordinance. The amendment to the *building code* simply provided a short-term limitation on building demolition in a certain part of the city.

Thus, the language and operation of the zoning ordinance were unchanged after the amendment. It did not prevent demolition of buildings before the amendment, and did not prevent demolition after. In other words, the amendment to the building code regulated something which the zoning code did not address. In the present case, on the other hand, the moratorium changed the operation of an express guarantee of the zoning code. The Board was required to consider SLUP applications for wind energy systems before the moratorium, and after the passage of the moratorium they were not. *Heritage Hill* is distinguishable and thus provides limited guidance.

And there is persuasive non-Michigan authority which suggests that even temporary moratoria on the operation of zoning ordinances substantially interfere with the use of land and thus constitute zoning regulation. *See Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 472 (Tenn. 2004) (citing *Square Lake* and collecting other authority). *See also City of Sanibel v. Buntrock*, 409 So. 2d 1073, 1075 (Fla. Dist. Ct. App. 1981) (finding that a one year moratorium on the issuance of permits was a zoning regulation because "[t]o entirely prohibit a person from building upon his property even temporarily is a substantial restriction upon land use"); *Vulcan Materials Co. v. Iredell Cty.*, 103 N.C. App. 779, 782 (1991) (quoting and relying upon *Buntrock*); *Temporary or interim measures*, 8 McQuillin Mun. Corp. § 25:68 (3d ed.) ("A municipal corporation or other zoning authority may enact a temporary or interim zoning

ordinance . . . [but] statutory provisions pertaining to the adoption of municipal zoning ordinances may not be disregarded in the enactment of temporary measures.") (citing *Krajenke Buick Sales v. Kopkowski*, 322 Mich. at 255)).

Thus, numerous states have concluded that a temporary moratorium on the operation of a zoning ordinance constitutes a zoning regulation. The only controlling Michigan authority which the Court has identified confirms that "temporary" zoning regulations must nonetheless comply with the procedural requirements of the enabling act. Defendants admit that the moratorium was not adopted in accordance with ZEA procedures. *See* Def. Resp. Br. at 1, 10. *See also* M.C.L. §§ 125.3201; 125.3202; 125.3306; 125.3308. Accordingly, the moratorium is "void." *Krajenke Buick Sales v. Kopkowski*, 322 Mich. at 255.[4]

## 2.

Even if the Court concluded that the moratorium did not regulate land use and thus could have been adopted pursuant to the Board's police powers, the moratorium would still be void. As Plaintiffs argue, under Michigan law, an ordinance cannot be suspended by resolution.

It is axiomatic that "an ordinance may not be repealed or amended without action of equal dignity to that required in its enactment." *City of Saginaw v. Consumers' Power Co.*, 213 Mich. 460, 469 (1921). *See also Lorencz v. Brookfield Twp.*, No. 319235, 2015 WL 1931967, at *2 (Mich. Ct. App. Apr. 28, 2015) ("[A]n ordinance may only be repealed by an act of equal dignity, which requires the township to repeal by ordinance and not resolution."); *Lee v. City of Taylor*, 63 Mich. App. 221, 223 (1975) ("It is settled that a municipal corporation may only repeal an ordinance by

---

[4] Defendants attempt to argue that the Court has already rejected Tuscola's argument in the related suit Tuscola has brought against Almer Township and the Almer Township Board. In that suit, Tuscola did challenge the legitimacy of a moratorium which the Township enacted. But the Township considered Tuscola's SLUP application on the merits notwithstanding the moratorium. For that reason, the Court expressly declined to determine whether the moratorium was legitimately enacted. *See* Nov. 3, 2017, Op. & Order at 32 n.9, Case No. 17-cv-10497, ECF No. 39. Because that issue was not resolved there, that opinion provides no guidance. In this suit, the Township declined to consider the SLUP application on the merits.

an act of equal dignity and formality."); *McCarthy v. Vill. of Marcellus*, 32 Mich. App. 679, 688–89 (1971) ("An ordinance or resolution cannot be amended, repealed, or suspended by another act by a council of less dignity than the ordinance or resolution itself."); *Expiration and suspension*, 5 McQuillin Mun. Corp. § 15:40 (3d ed.) ("A city may suspend an ordinance by ordinance. However, the operation of an ordinance cannot be suspended by the act of municipal officers, even though the suspension is attempted by resolution."). This is the doctrine of legislative equivalency.

Michigan law also addresses the distinction between ordinances and resolutions. In *Rollingwood*, the court of appeals explained that "the difference between municipal ordinances and resolutions is in what the actions do, rather than in the manner in which they are passed. Resolutions are for implementing ministerial functions of government for short-term purposes. Ordinances are for establishing more permanent influences on the community itself." *Rollingwood Home Owners Corp. v. City of Flint*, 26 Mich. App. 1, 9–10 (1970) (citing *Resolutions and ordinances distinguished*, 5 McQuillin Mun. Corp. § 15:2 (3d ed.)). The court of appeals concluded that "a large-scale rezoning of property for the purpose of providing for public or quasi-public housing and involving the building of multi-million dollar housing complexes" was not a "ministerial function" and thus could not be accomplished by resolution. *Id.* at 10. The court of appeals acknowledged that, "[n]ormally, when faced with the fact of a resolution passed by a city government in an area where an ordinance is required, this Court would respond by declaring the resolution void." *Id.* (citing 5 McQuillin Mun. Corp. § 16.10). Nevertheless, the court of appeals opted to permit the resolution to "stand as an ordinance" and subject it to referendum procedures. *Id.*

On appeal, the Michigan Supreme Court rejected the court of appeals' rationale on two grounds. *Rollingwood Homeowners Corp. v. City of Flint*. 386 Mich. 258 (1971). First, the

Supreme Court concluded that "[t]here is nothing inherently legislative about a decision to acquire real estate" and thus no "ordinance was required." *Id.* at 267–68. Second, the Supreme Court determined that, if an ordinance had been required, the correct remedy was to declare the resolution a "nullity," not to permit the resolution to "operate as a de facto ordinance." *Id.* at 265, 267.

In *Dan & Jan Clark, LLC v. Charter Twp. of Orion*, the Michigan Court of Appeals interpreted *Rollingwood* in the context of a moratorium. No. 284238, 2009 WL 1830749, at *4 (Mich. Ct. App. June 25, 2009). In that case, the Orion Township passed a moratorium on applications for "new development, expansion, or rezoning" in a certain area for 120 days (later extended for an additional 180 days). *Id.* at *1. The plaintiff challenged the enactment of the moratorium, arguing that "its due process rights were violated because the moratorium was simply a resolution and could not trump the existing Township ordinances." *Id.* at *4. In rejecting that argument, the court of appeals concluded that "the substance of the zoning board's action did not require the adoption of an ordinance." *Id.* The *Clark* opinion cited *Rollingwood* for the proposition that "[r]esolutions are for implementing ministerial functions of government for short-term purposes, [while] [o]rdinances are for establishing more permanent influences." *Id.*[5] The *Clark* opinion reasoned as follows:

> The moratorium lasted less than a year, even with the extension, making it clearly short-term. Additionally, it did not create new procedures or even affect all petitions related to rezoning and special use. Rather, it simply deferred consideration of any new petitions until after a review of the master plan. We conclude that the

---

[5] Tuscola argues that *Clark* is relying upon the (reversed) court of appeals rationale which the Michigan Supreme Court rejected in *Rollingwood*, but that is incorrect. As explained above, the Michigan Supreme Court agreed that the distinction between resolutions and moratoria was the intention of the legislative body in taking the action. 386 Mich. at 264. *See also Kalamazoo Mun. Utilities Ass'n v. City of Kalamazoo*, 345 Mich. 318, 328 (1956) ("[T]he act which amends, modifies or repeals the law should be of equal dignity with the act which enacts or establishes the law. A resolution is not a law or an ordinance but merely the form in which a legislative body expresses a determination or directs a particular action. An ordinance prescribes a permanent rule for conduct of government, while a resolution is of special or temporary character."). The relevant "reasoning" which the Michigan Supreme Court rejected in *Rollingwood* was the court of appeals' conclusion that a resolution could "stand as an ordinance." 386 Mich. at 264.

moratorium was properly enacted as a resolution and did not operate as a de facto ordinance. . . . Applicants were not denied a right to apply for rezoning, but instead were informed that decisions about such matters were temporarily deferred. Applicants were not even absolutely prevented from having their petitions considered, but were given the opportunity to request a waiver from the moratorium and receive a hearing on their applications for waiver, giving them the opportunity to show that the moratorium was interfering with their constitutional rights.

*Id.* at *4–5.

*Clark* does imply that a moratorium on land use applications does not run afoul of the doctrine of legislative equivalency. But there are a number of persuasive reasons to believe that the Michigan Supreme Court would not adopt the holding in *Clark* and apply it to the present scenario. To begin with, there are a number of factual differences. The *Clark* opinion emphasizes that the moratorium lasted less than a year (300 days total). But the Township's second moratorium has already lasted more than a year, appears likely to last at least eighteen months, and may be extended further. Sec. Moratorium Res., ECF No. 1, Ex. 9. And the second moratorium was preceded by the *first* moratorium, which lasted 120 days. First Moratorium Res., ECF No. 1, Ex. 6. The two moratoria were separated by a three month respite. In other words, by the time the second moratorium ends, the wind energy ordinance will have been suspended for the better part of two years. Given that fact, there is reason to believe that the Michigan Supreme Court would find that the moratorium here was more akin to a "permanent influence on the community" than a "short-term" ministerial function. Finally, the second moratorium here does not provide Tuscola the right to seek a waiver, unlike the moratorium in *Clark*.

The *Clark* opinion carries limited persuasive value for several additional reasons. First, the opinion is unpublished. Under Michigan Court Rule 7.215(C), it is not "precedentially binding" and "should not be cited for propositions of law for which there is published authority." Second, and relatedly, the *Clark* opinion fails to directly grapple with the doctrine of legislative

equivalency. The resolution in *Rollingwood* did not compromise the operation of an existing ordinance, and so that issue was not addressed by the Supreme Court. Other published cases from Michigan courts, however, have confirmed that ordinances cannot be suspended by resolution. *See Consumers' Power Co.*, 213 Mich. at 469; *Lee*, 63 Mich. App. at 223; *McCarthy*, 32 Mich. App. at 688–89. *See also Lorencz v. Brookfield Twp.*, 2015 WL 1931967, at *2. In other words, an ordinance can be amended or suspended only by ordinance because the nature of the action is inherently legislative. *See Rollingwood*, 386 Mich. at 267 ("The attempt to legislate by resolution is simply a nullity. . . . Size and scope are not the proper yardsticks. There may be small ordinances and big resolutions: the difference lies in the nature of the act, not its impact."). *Clark*'s failure to directly consider these holdings dramatically undermines its persuasive value.

Courts in other states consistently hold that an ordinance can be suspended only by passage of another ordinance. In *Deighton v. City Council of Colorado Springs*, the Colorado Court of Appeals held that a moratorium enacted by resolution was void because it suspended the operation of a valid zoning ordinance. 902 P.2d at 429. The court confirmed that zoning moratoria are permissible in certain situations, but explained that a suspension of an ordinance can be effected only by passage of another ordinance. *Id.*[6] *See also State ex rel. Brown v. Corp. of Bolivar*, 209 W. Va. 138, 142 (2000) (explaining that a blanket moratorium on issuance of building permits was void because an ordinance cannot be suspended by a resolution); *Valley Brook Dev., Inc. v. City of Bettendorf*, 580 N.W.2d 730, 731 (Iowa 1998) ("In the first place a city council resolution cannot undermine a city ordinance. The validity of an ordinance is not affected by a resolution; it is

---

[6] Defendants attempt to distinguish *Deighton* by citing *Droste v. Bd. of Cty. Comm'rs of Cty. of Pitkin*, 159 P.3d 601 (Colo. 2007). In *Drost*, the Colorado Supreme Court confirmed that municipalities have the authority to "adopt ordinances, confirmed through public hearings, imposing a temporary moratorium on land use applications reviews." *Id.* at 603. *Drost* and *Deighton* are entirely compatible. *Deighton* involved a moratorium passed by resolution; *Drost* involved a moratorium passed by ordinance. Both cases demonstrate that moratoria are permissible if proper procedures are followed. The distinction is that, in *Deighton*, the proper procedures were not satisfied.

amended, repealed, or suspended only by an ordinance."); *Simpkins v. City of Gaffney*, 315 S.C. 26, 29 (Ct. App. 1993) ("We hold the moratorium passed by the city council on the issuance of permits under the existing ordinance is invalid. First, the city council did not possess the power to suspend the ordinance temporarily. Second, to suspend operation of the existing zoning ordinance regulating the construction of duplexes and multi-family dwellings, the ordinance must be either repealed or succeeded by another ordinance or an instrument of equal dignity."); *People ex rel. J. C. Penney Properties, Inc. v. Vill. of Oak Lawn*, 38 Ill. App. 3d 1016, 1018–1019 (1976) (holding that a moratorium passed by motion had "no legal standing" because it "had never been adopted as an ordinance or incorporated as an amendment to the Village's zoning ordinance"); *Harrell v. City of Lewiston*, 95 Idaho 243, 246 (1973) ("Because the City of Lewiston elected to establish and amend its zoning regulations by ordinance, any legislative act by the Lewiston City Council effecting a zoning change must in substance be accomplished by an ordinance."); *Expiration and suspension*, 5 McQuillin Mun. Corp. § 15:40 (3d ed.).

In response to Tuscola's argument regarding legislative equivalency, Defendants contend that there is longstanding precedent which establishes that Michigan municipalities have the power to impose temporary moratoria. But that power is not in dispute. Tuscola admits that municipalities may enact moratoria. Rather, the question raised by Tuscola's motion is whether a municipality may enact a moratorium by resolution which suspends the operation of a valid zoning ordinance. For the reasons stated above, the answer is no.

The cases which Defendants cite in support of the proposition that the moratorium here is valid are all legally or factually distinguishable. Defendants cite a long line of cases where courts address whether moratoria on zoning applications constitute a regulatory "taking" under the Fifth Amendment of the United States Constitution. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l*

*Planning Agency*, 535 U.S. 302, 321, 122 S. Ct. 1465, 1478, 152 L. Ed. 2d 517 (2002) (finding that a 32 month moratorium did not constitute a per se constitutional taking); *Parkview Homes, Inc. v. City of Rockwood*, No. 05-CV-72708-DT, 2006 WL 508647, at *6 (E.D. Mich. Feb. 28, 2006) (concluding that a moratorium did not violate the United States Constitution); *Oaks v. Montague Twp.*, No. 222401, 2001 WL 1512033, at *8 (Mich. Ct. App. Nov. 27, 2001) (holding that a moratorium did not constitute a regulatory taking); *See also Loesel v. City of Frankenmuth*, 692 F.3d 452 (6th Cir. 2012) (finding that a genuine issue of fact existed regarding whether a zoning ordinance violated the plaintiff's equal protection rights and noting as an aside that the amended ordinance was adopted after a moratorium was enacted); *Lamar OCI N. Corp. v. City of Walker*, 803 F. Supp. 2d 707, 711 (W.D. Mich. 2011) (finding in the context of a First Amendment freedom of speech claim that the municipality was "constitutionally permitted to enact a moratorium for a reasonable period of time").

The question of whether a moratorium violates the federal constitution is entirely different from the question of whether the moratorium was validly enacted, pursuant to state law, in the first place. The cases which Defendants cite provide guidance for the first question, but not the second. And Tuscola's motion rises and falls on whether the moratorium was validly enacted. The remainder of the cases which Defendants rely upon mention that moratoria were enacted, but do not squarely consider their validity. *See Adams Outdoor Advert. v. E. Lansing*, 439 Mich. 209, 224 n.8 (1992) (Levin, J., dissenting) (noting, in the context of a challenge to the city's authority to enact and enforce its sign ordinance, that a moratorium was enacted before the new sign code was adopted); *City of Brighton v. Twp. of Hamburg*, 260 Mich. App. 345, 346 (2004) (holding that a zoning ordinance was preempted by state law and noting that the invalid ordinance was adopted after a moratorium was enacted); *Guenther v. City of Plymouth*, No. 239902, 2003 WL 22204735,

at *1 (Mich. Ct. App. Sept. 23, 2003) (finding that the plaintiff had not exhausted his administrative remedies because no land use application or variance had been sought and noting that the plaintiff had filed the lawsuit before a moratorium had expired); *Cent. Advert. Co. v. St. Joseph Twp.*, 125 Mich. App. 548, 553–55 (1983) (noting that an amended ordinance was timely adopted after the court invalidated the old ordinance because a moratorium was adopted, but also noting that "moratoria are not regarded favorably by the courts).

None of these cases provide guidance for the questions raised by Tuscola's motion. At best, they indicate that municipalities may validly enact moratoria in certain circumstances. But that proposition is undisputed here. The cases cited by Defendants do not expressly address the doctrine of legislative equivalency. To the extent any of these cases involve moratoria which suspended valid ordinances, the portions Defendants cite to are dicta because the validity of the moratorium's enactment was never considered. *See Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (explaining that if a portion of the rationale of a prior case was not essential to the ultimate resolution, the language is not binding); *Pew v. Michigan State Univ.*, 307 Mich. App. 328, 334 (2014) ("Dictum is a judicial comment that is not necessary to the decision in the case."). The cases where courts have squarely considered the doctrine of legislative equivalency control over the few cases Defendants identify where courts did not consider whether the moratorium was validly enacted. The doctrine of legislative equivalency is well established in Michigan, and the moratorium Defendants adopted by resolution violated that doctrine. "The attempt to legislate by resolution is simply a nullity." *Rollingwood*, 386 Mich. at 267.

## C.

Because the moratorium was invalidly enacted, the remaining issue is the proper remedy. Tuscola contends that it "is entitled to have its SLUP application processed under the requirements

of the Ordinance that existed when the Application was originally submitted," but admits that "Michigan courts have yet to address the proper remedy for the Township's violation." Mot. Judg. Pleadings at 16. In support of its request, Tuscola cites *Bittinger v. Corp. of Bolivar,* 183 W. Va. 310, 315 (1990). In *Bittenger*, the court found that the town council had improperly attempted to suspend a valid ordinance by passing a moratorium by resolution. Because the moratorium was thus void, the court found that the plaintiffs were "entitled to have their applications for permits which were submitted within that moratorium period considered under the ordinances existing at that time and granted, if the ordinances as written would permit." *Id. See also Corp. of Bolivar*, 209 W. Va. at 142–44 (following *Bittenger* and holding that the plaintiffs were "entitled to develop and use the property for any lawful purpose as they might have prior to the void moratorium and the now repealed zoning ordinance").

Several facts are relevant in considering the appropriate remedy. First, Tuscola submitted a SLUP application during the period between the first and second moratorium. The public hearing on that application was scheduled for after the 2016 election date. As noted above, after being elected, the new Ellington Township Board members instituted the moratorium. Because of the moratorium, no further consideration of the SLUP application has occurred. Second, the zoning ordinance provides no deadlines for Defendants to review the SLUP application. Third, both parties agree that the zoning ordinance has not been amended during the pendency of the moratorium. *See* Mot. Judg. Pleadings at 8; Def. Resp. Br. at 9–10.

Because the moratorium is void, Defendants cannot use the moratorium as a reason to refuse to consider the SLUP application. In other words, the operative law in Ellington Township is the existing zoning ordinance. Tuscola is entitled to the procedures and consideration guaranteed by the ordinance. As Defendants emphasize, however, that zoning ordinance provides no deadlines

for the Planning Commission or Township Board to review the application. Accordingly, the appropriate timeline for consideration of Tuscola SLUP application is uncertain. The due process implications of that issue are not framed by the current motion, and thus are left unresolved.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Tuscola Wind III, LLC's, motion for judgment on the pleadings, ECF No. 16, is **GRANTED** as to Count One.

It is further **ORDERED** that the second moratorium, reproduced at ECF No. 1, Ex. 9, is **VOID.**

Dated: March 13, 2018                                          s/Thomas L. Ludington
                                                              THOMAS L. LUDINGTON
                                                              United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 13, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager

---