UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TUSCOLA WIND III, LLC,

                    Plaintiff,                                  Case No. 17-cv-11025

v                                                  Honorable Thomas L. Ludington

ELLINGTON TOWNSHIP, et al,

                    Defendants.

_____/

# OPINION AND ORDER DENYING MOTION TO ENFORCE JUDGMENT, DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT , DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DENYING MOTION TO CERTIFY INTERLOCUTORY APPEAL, AND DISMISSING COUNTS TWO, THREE, AND FOUR AS MOOT

On March 31, 2017, Plaintiff Tuscola Wind III, LLC, ("Tuscola") filed a complaint against the Ellington Township ("Township") and the Ellington Township Board ("Board"). ECF No. 1. Tuscola sought the invalidation of the Township's moratorium on the consideration of wind energy SLUP applications which the Township initiated in November 2016. In the First Count, Tuscola argues that the moratorium was enacted in violation of the Michigan Zoning Enabling Act. Count Two alleges that newly elected members of the Township violated the Michigan Open Meetings Act prior to being sworn into office. The only requested relief related to Count Two is the invalidation of the moratorium. In Counts Three and Four, Tuscola argues that the moratorium violates Tuscola's substantive and procedural due process rights.

On November 2, 2017, Tuscola filed a motion for judgment on the pleadings as to Count One. ECF No. 16. On March 13, 2018, the Court granted that motion and found the moratorium void because the moratorium had not been enacted pursuant to the procedures outlined in the Zoning Enabling Ordinance and because the moratorium violated the doctrine of legislative

equivalency. ECF No. 28. Two weeks later, the Township filed a motion to certify an interlocutory appeal of that opinion and order. ECF No. 30. Before that motion could be fully briefed, cross motions for summary judgment were filed. ECF No. 32. On June 26, 2018, Tuscola filed a motion to enforce the March 13, 2018, opinion and order.

As explained below, Plaintiff's motion to enforce the judgment will be denied, all remaining counts will be dismissed without prejudice, and the motion for certification of an interlocutory appeal will be denied.

## I.

### A.

Tuscola Wind III, LLC, is a Delaware limited liability company which is owned by NextEra Energy Resources, LLC. Comp. at 3, 4. NextEra is "the largest generator of wind energy in the United States." *Id.* at 4. NextEra has previously constructed two wind energy centers in Tuscola County and Bay County, Michigan, named the Tuscola Wind Energy Centers I and II. *Id.* at 4–5. In 2015, Tuscola "proposed to construct the Tuscola III Wind Energy Center . . . in Tuscola County Michigan." *Id.* at 5. That project is the source of the current litigation. The proposed Tuscola III Wind Energy Center would include fifty-five wind turbines. The proposal suggested that nineteen of those turbines should be sited in Ellington Township. SLUP App. at 2, ECF No. 32, Ex. 10.

Tuscola's discussions with the Township regarding a potential wind energy development began in early 2014. Tuscola's main point of contact was Duane Lockwood, the Township's supervisor. *See* Taylor Butterfield Invoices, ECF No. 33, Ex. A. Although it is unclear whether Lockwood ever talked directly with Tuscola representatives, invoices from the firm representing the Township make clear that Tuscola and Lockwood were frequently exchanging information

during this period. *Id.* at 14–17. Lockwood also signed several option agreements with Tuscola permitting them to use his land for wind energy development, if approved by the Township. *See* Op. Agreements, ECF No. 33, Ex. B. The first of those agreements is dated August 12, 2014. *Id.* at 14. As Township supervisor, Lockwood had the authority to appoint members of the Planning Commission. Trumbaur Dep. at 40–41, ECF No. 33, Ex. C. Given that authority and Lockwood's financial arrangements with Tuscola, the Township (as presently constituted) believes that Lockwood should have been excluded from involvement in consideration of Tuscola's wind energy application.

In the summer of 2014, the Township decided to review and update its existing wind ordinance. The parties agree that this decision was made in anticipation of Tuscola's planned wind development. At the time, the Township's wind energy regulation spanned less than a page. To assist in the amendment process, Lockwood retained the Spicer Group to consult for the Township. Spicer Retention Letter, ECF No. 33, Ex. D. With the Spicer Group's assistance, an amended wind ordinance was drafted (the "first amended ordinance"). The first amended ordinance was approved by the Planning Commission on September 30, 2014, and by the Board on January 13, 2015. *See* Jan. 13, 2015, Minutes, ECF No. 33, Ex. E. At that meeting, Lockwood presented the proposed update on the zoning ordinance, moved to adopt the amendments, and voted for the amendments. *Id.*

**B.**

Almost immediately, opposition to the amended wind energy ordinance arose within the community. That opposition primarily took the form of the Ellington-Almer Concerned Citizens Group ("the Group"). At the February 9, 2016, Ellington Board meeting, the Group argued that the amended sound ordinance was one of the weakest enacted in Michigan in the last five years.

*See* Power Point at 3, ECF No. 33, Ex. I. In response to the public pushback, the Board adopted a 120-day moratorium on consideration of wind energy Special Land Use Permit ("SLUP") applications. *See* April 4, 2016, Moratorium, ECF No. 1, Ex. 7. During the pendency of that moratorium, additional opposition to the Board's engagement with wind energy developed within the community. In particular, Supervisor Lockwood received criticism for his perceived conflict of interest. *See* Nolan Letter, ECF No. 33, Ex. K; News Article, ECF No. 33, Ex. J.

## C.

Four members of the Concerned Citizens Group decided to run for election to the Ellington Board. The Group included members from the neighboring Township of Almer (which was also a focus of Tuscola's anticipated wind development project) who had also decided to run for election in Almer. Four members of the Group were elected to the Ellington Township Board, and a number of members were elected to the Almer Township Board.[1] In 2016, the Group held frequent meetings to discuss election strategy and obtain election materials. *See* Campbell Dep. at 16–17, 19–21, ECF No. 32, Ex. 7; Election Handout Email, ECF No. 32, Ex. 8; Election Platform Email, ECF No. 32, EX. 9. The Group members were frustrated with the current Board's apparent "disconnect" from public opinion, especially with respect to wind energy. Campbell Dep. at 18–20.

On August 2, 2016, Lockwood was defeated in the Republican primary election and became a lame-duck supervisor. Election Rep., ECF No. 33, Ex. Q. On September 23, 2016, Tuscola submitted its SLUP application to Ellington Township. On October 10, 2016, the Planning

---

[1] The newly elected members of the Ellington Board were: Russell Speirs, Bobbie Mozden, Carmell Pattulo, and Greg Cambell. One existing member of the Board, Mike Wagner, was reelected. Wagner is not a member of the Concerned Citizens Group.

Commission scheduled a hearing for December 5, 2016, to consider the SLUP application.[2] One week before the general election, the Board (including Lockwood) held a meeting without notice to the public, thus violating the Michigan Open Meetings Act. *Lockwood v. Ellington* Opinion, ECF No. 33, Ex. R. At the meeting, the Board appointed two individuals to serve three year terms on the Planning Commission. *Id.* at 1. Because those appointments occurred at a meeting that violated the OMA, the Michigan Court of Appeals has declared the appointments to be invalid. *Id.* at 8.

The general election was held on November 8, 2016. The four newly elected Board members were sworn into office on November 20, 2016. Sometime prior to being sworn into office, the Group members decided to call a special meeting of the Ellington Board upon assuming office. Campbell Dep. at 43–45. The Group members wished to use that meeting to adopt a temporary moratorium on consideration of wind energy SLUP applications and engage new legal counsel for the Township. *Id.* The new Board held that special meeting on November 22, 2016.

The Board made several decisions at the meeting. First, the Board retained Mike Homier of Foster Swift to represent the Township. Nov. 22, 2016, Minutes, ECF No. 33, Ex. S. Wagner, the only Board member who is not a member of the Concerned Citizens Group, "challenged Supervisor Speirs over not contacting all board members regarding hiring Foster Swift law firm." *Id.* at 2. In response, Speirs explained that "this was the platform they ran on" and that the Board members did not discuss the decision after being elected to avoid violating the OMA. *Id.*

After being retained, Mr. Homier produced a "[r]esolution" to "adopt a wind energy conversion facilities Moratorium ordinance." *Id.* at 3. Mike Wagner requested that the moratorium be tabled so he could review it. Notwithstanding that request, the twelve-month moratorium was

---

[2] Tuscola contends that this post-election hearing date was selected at the request of the Concerned Citizens Group. Pl. Mot. Summ. J. at 5, ECF No. 32.

voted on and adopted. Finally, the Board considered the prior Board's October appointments to the Planning Commission. *Id.* The Board concluded that the meeting violated the OMA, thus invalidating those appointments. The Board then appointed Gregg Campbell to serve as the Board's liaison with the Planning Commission.

**D.**

Over the next few months, the new Board began working to draft a new, more stringent wind ordinance. *See* Jan. 17, 2017, Minutes, ECF No. 33, Ex. T (directing the Planning Commission to initiate amendments to the Zoning Ordinance). That process was prolonged. On March 31, 2017, Tuscola challenged the legal validity of the moratorium in a suit filed in this Court. On October 10, 2017, the Board extended the moratorium on consideration of wind energy SLUP applications for another six months. Res. Extend Mor., ECF No. 33, Ex. U. On March 8, 2018, this Court issued an opinion finding that the moratorium was void because it was enacted in violation of the Zoning Enabling Act and the doctrine of legislative equivalency. ECF No. 28. On April 10, 2018, the Township adopted a second set of amendments to the wind energy ordinance (the "second amended ordinance"). Res. Am., ECF No. 33, Ex. V.

On May 18, 2018, the Township informed Tuscola that "[a]ll applications for special land use permits for wind energy conversion systems must now comply with the 2018 Ordinance." May 18, 2018, Letter at 2, ECF No. 43, Ex. 1. In the letter, the Township indicated that Tuscola's pending application would not be considered under the old ordinance. Rather, the Township directed Tuscola to "i) amend, ii) supplement, or iii) withdraw and resubmit its application for a special use permit under the 2018 Ordinance." *Id.* In a responsive letter, Tuscola argued that the Township was required to process the pending SLUP application under the ordinance pending at the time the SLUP application was submitted. June 4, 2018, Letter, ECF No. 43, Ex. 2. That request

was denied. June 7, 2018, Letter, ECF No. 43, Ex. 3. In response, Tuscola filed a motion to enforce the Court's prior order.

## II.

Tuscola has moved for an order enforcing the Court's previous order invalidating the moratorium. Federal district courts have "inherent power to enforce [their] judgments," which necessarily includes jurisdiction over enforcement proceedings. *Peacock v. Thomas*, 516 U.S. 349, 356, 359 (1996). *See also S.E.C. v. Dollar Gen. Corp.*, 378 F. App'x 511, 516 (6th Cir. 2010). Similarly, district courts have the inherent power to award sanctions when parties act in bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). That power is derived from the court's "equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). Specifically, federal courts are justified in imposing sanctions when a party attempts to avoid satisfying a binding judgment in bad faith. *In re John Richards Homes Bldg. Co., L.L.C.*, 404 B.R. 220, 227 (E.D. Mich. 2009).

Both parties have also moved for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.

The threshold question framed by the pending motions is one of remedy for the Township's moratorium on addressing wind energy SLUP applications under the first amended ordinance. Tuscola's motion to enforce the Court's prior order raises the question of whether Tuscola is entitled to injunctive relief requiring consideration of the SLUP application under the first amended ordinance. And a latent issue in both the motion for leave for an interlocutory appeal and the cross motions for summary judgment is whether Tuscola's alternative claims for relief are moot because they merely raise alternative challenges to the already voided moratorium.

Because consideration of the motion to enforce the Court's prior order will clarify the proper resolution of the remaining motions, that motion will be considered first. Then, the viability of Tuscola's remaining claims, and the necessity of interlocutory appeal, will be considered.

### A.

In the Court's March 13, 2018, opinion and order, the moratorium was found to be void because it was not validly enacted. March 13, 2018, Op. & Order, ECF No. 28. The issue of remedies was briefly considered:

> Because the moratorium was invalidly enacted, the remaining issue is the proper remedy. Tuscola contends that it "is entitled to have its SLUP application processed under the requirements of the Ordinance that existed when the Application was originally submitted," but admits that "Michigan courts have yet to address the proper remedy for the Township's violation." Mot. Judg. Pleadings at 16. In support of its request, Tuscola cites *Bittinger v. Corp. of Bolivar*, 183 W. Va. 310, 315 (1990). In *Bittenger*, the court found that the town council had improperly attempted to suspend a valid ordinance by passing a moratorium by resolution. Because the moratorium was thus void, the court found that the plaintiffs were "entitled to have their applications for permits which were submitted within that moratorium period considered under the ordinances existing at that time and granted, if the ordinances as written would permit." *Id. See also Corp. of Bolivar*,

209 W. Va. at 142–44 (following *Bittenger* and holding that the plaintiffs were "entitled to develop and use the property for any lawful purpose as they might have prior to the void moratorium and the now repealed zoning ordinance").

Several facts are relevant in considering the appropriate remedy. First, Tuscola submitted a SLUP application during the period between the first and second moratorium. The public hearing on that application was scheduled for after the 2016 election date. As noted above, after being elected, the new Ellington Township Board members instituted the moratorium. Because of the moratorium, no further consideration of the SLUP application has occurred. Second, the zoning ordinance provides no deadlines for Defendants to review the SLUP application. Third, both parties agree that the zoning ordinance has not been amended during the pendency of the moratorium. *See* Mot. Judg. Pleadings at 8; Def. Resp. Br. at 9–10.

Because the moratorium is void, Defendants cannot use the moratorium as a reason to refuse to consider the SLUP application. In other words, the operative law in Ellington Township is the existing zoning ordinance. Tuscola is entitled to the procedures and consideration guaranteed by the ordinance. As Defendants emphasize, however, that zoning ordinance provides no deadlines for the Planning Commission or Township Board to review the application. Accordingly, the appropriate timeline for consideration of Tuscola SLUP application is uncertain. The due process implications of that issue are not framed by the current motion, and thus are left unresolved.

*Id.* at 21–23.

Now, Tuscola contends that the March 13, 2018, opinion and order requires "that TWIII's application be considered under the 2015 Ordinance," requests an order confirming that interpretation, and suggests that Township officials should be held in contempt if they refuse to comply. Mot. Enf. Judg. at 7, ECF No. 43. Tuscola grounds its argument on the following passage from the March 13, 2018, opinion and order: "Because the moratorium is void, Defendants cannot use the moratorium as a reason to refuse to consider the SLUP application. In other words, the operative law in Ellington Township is the existing zoning ordinance. Tuscola is entitled to the procedures and consideration guaranteed by the ordinance." March 13, 2018, Op. & Order at 22. Tuscola omits, however, the next two sentences: "As Defendants emphasize, however, that zoning ordinance provides no deadlines for the Planning Commission or Township Board to review the

application. Accordingly, the appropriate timeline for consideration of Tuscola SLUP application is uncertain." *Id.* at 22–23. Tuscola's reading of the Court's order mischaracterizes both the Court's reasoning and the relief that was ordered.

## 1.

The Court's prior order purposefully stopped short of affirmatively ordering the Township to consider Tuscola's SLUP application on the merits. The order noted that Tuscola was asserting its entitlement to "'have its SLUP application processed under the requirements of the Ordinance that existed when the Application was originally submitted,'" but also quoted Tuscola's admission that Michigan courts have not considered the proper remedy. *Id.* at 22 (quoting Mot. Judg. Pleadings at 16).

Rather than offer an advisory opinion on whether Tuscola would be entitled to additional relief in the future, the Court narrowly held that "Defendants cannot use the moratorium as a reason to refuse to consider the SLUP application." *Id.* The Court confirmed that the "operative law in Ellington Township is the existing zoning ordinance," but explained that because the ordinance provides no deadlines for review of SLUP applications, "the appropriate timeline for consideration of Tuscola['s] SLUP application is uncertain." *Id.* at 22–23. In so holding, the Court affirmatively rejected Tuscola's request that the Township be ordered to review the SLUP application. Rather, the Court simply reminded all parties that Tuscola is entitled to the consideration of its SLUP application pursuant to the zoning ordinance as it then existed. Because, at that time, the zoning ordinance had not been amended during the pendency of the suit, any opinion regarding whether the SLUP application could be reviewed under a hypothetical amended ordinance would have been advisory.

**2.**

Now, that hypothetical scenario has come to fruition. Thus, for the first time, the question of whether Tuscola is "entitled to have its SLUP application processed under the requirements of the Ordinance that existed when the Application was originally submitted"[3] is now before the Court. Mot. Judg. Pleadings at 16. As Defendants note, Michigan courts have unambiguously held that Tuscola is not entitled to the requested relief.

The general rule in Michigan is that "'the law to be applied is that which was in effect at the time of decision [by the trial court]. Thus, if a zoning ordinance has been amended [after suit was filed] . . . a court will give effect to the amendment[.]'" *Grand/Sakwa of Northfield, LLC v. Northfield Twp.*, 304 Mich. App. 137, 141 (2014) (quoting *Klyman v. City of Troy*, 40 Mich. App. 273, 277–278 (1972)). *See also City of Lansing v. Dawley*, 247 Mich. 394, 396 (1929) (concluding that a building permit was properly denied pursuant to an ordinance as amended during the pendency of the litigation because the plaintiff had not acquired vested property rights before the amendments). There are two exceptions: "'A court will not apply an amendment to a zoning ordinance where (1) the amendment would destroy a vested property interest acquired before its enactment, or (2) the amendment was enacted in bad faith and with unjustified delay.'" *Grand/Sakwa of Northfield, LLC*, 304 Mich. App. at 141 (quoting *Lockwood v. Southfield*, 93 Mich. App. 206, 211 (1979)).

Neither exception applies here. First, Tuscola does not argue that it has a vested property interest, likely because SLUP approval had not occurred and construction of the wind farm had not commenced at the time of the 2018 amendments. "Michigan courts have continually reaffirmed that a building permit and some substantial construction must have commenced before property

---

[3] That is, under the first amended ordinance, as opposed to the second amended ordinance.

rights can vest." *Seguin v. City of Sterling Heights*, 968 F.2d 584, 591 (6th Cir. 1992) (citing

*Schubiner v. W. Bloomfield Twp.*, 133 Mich. App. 490 (1984) ("Where the building permit has

been applied for but has not been issued, 'vested rights' are not acquired even though substantial

sums have been expended by the applicant."). And, importantly, there is "no protected property

interest in the" zoning application procedures themselves. *See Pamela B. Johnson Tr. ex rel.

Johnson v. Anderson,* No. 315397, 2014 WL 4087967, at *9 (Mich. Ct. App. Aug. 19, 2014)

(quoting *Richardson v. Twp. of Brady*, 218 F.3d 508, 518 (6th Cir. 2000)). Similarly, a pending

application for a building permit does not create a property interest where the zoning authorities

have discretion to deny the application or limit the use of property. *See EJS Properties, LLC*, 698

F.3d at 856 ("[A] party cannot possess a property interest in the receipt of a benefit when the state's

decision to award or withhold the benefit is wholly discretionary.") (quoting *Med Corp., Inc. v.

City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)). The Michigan Court of Appeals has held, in

*Anderson*, that "the authority exercised by officials in regard to the granting of a request for a

special use is wholly discretionary, and thus plaintiff lacks a legitimate claim of entitlement or a

justifiable expectation in the outcome." 2014 WL 4087967, at *9.

The second exception prevents a change in an ordinance from being applied if the

amendment was "enacted simply to manufacture a defense." *Klyman*, 40 Mich. App. 279.

Importantly, courts "will not void a municipality's action simply because it served to strengthen

its litigation position." *Grand/Sakwa of Nothfield, LLC*, 304 Mich. App. 137, 143. Rather, the

question is whether "the *predominant* motivation for the ordinance change was improvement of

the municipality's litigation position." *Id.* at 143–44 (emphasis in original). *See also id.* at 143

("[W]e . . . reject the notion that if improving the municipality's litigation position plays any role

in the decision to adopt the new ordinance, bad faith has been sufficiently established."). Tuscola

has repeatedly argued, in its complaint and during motions practice, that the new members of the Board are ideologically opposed to wind energy. The Concerned Citizens Group challenged the first amendments to the wind energy ordinance as inexcusably weak immediately after they were enacted. Clearly, the new members of the Board intended to amend the wind energy ordinance from the beginning. Tuscola did not file suit until March 31, 2017, months after the amendment process had been initiated by both the passage of the moratorium and by the direction to the Planning Commission to initiate amendments. Tuscola has identified no evidence which suggests that the Board's *predominant* motivation in enacting the 2018 amendments was to advance the Township's litigation position at the expense of the best policy decision for the Township. To the contrary, the undisputed record makes clear that the new Board members chose to run for office, in large part, because of their belief that the 2015 amendments were inadequate to protect the Township.

Tuscola argues that the Michigan cases relied upon by the Township are inapplicable. Tuscola admits that "[t]hese cases recognize that when an ordinance is lawfully amended *after a municipality renders a decision on an ordinance*, the reviewing court must apply the amended ordinance to determine whether the municipality's decision was proper." Pl. Reply. Br. at 4, ECF. No. 45 (emphasis in original). But Tuscola argues that "these cases do not address a situation where a township uses an illegal process to delay consideration of a valid application in order to buy time to enact a more restrictive ordinance and ostensibly preclude the proposed use." *Id.* In that circumstance, Tuscola believes that the Michigan courts would adopt the reasoning found in two cases arising out of West Virginia. *See Bittinger v. Corp. of Bolivar*, 183 W. Va. 310, 315 (1990); *State ex rel. Brown v. Corp. of Bolivar*, 209 W. Va. 138, 143 (2000). In *Bittenger*, the West Virginia Supreme Court invalidated a moratorium on the issuance of building permits and

concluded that "the appellants are entitled to have their applications for permits which were submitted within that moratorium period considered under the ordinances existing at that time and granted, if the ordinances as written would permit." 183 W. Va. at 315. *See also Corp. of Bolivar*, 209 W. Va. 144 ("[W]e find that equitable considerations dictate that Ms. Brown and her immediate purchasers and/or her immediate successors in title to the estate's property are entitled to develop and use the property for any lawful purpose as they might have done prior to the void moratorium and the now repealed zoning ordinance.").

Tuscola's argument confuses several important and distinct issues. The first issue is the remedy which Tuscola was entitled to at the time the moratorium was invalidated. As explained above, the Court invalidated the moratorium, but declined to manufacture extraneous and redundant legal obligations for the Township not already imposed by the ordinance. Because Tuscola had sought only the invalidation of the moratorium and had not challenged the first amended ordinance on its face or as applied, any further relief would have constituted an advisory opinion.

The second issue is whether, absent the moratorium, Tuscola's SLUP application would have received full consideration prior to the second amended ordinance being enacted. As the Court discussed in the March 13, 2018, opinion and order, the zoning ordinance at the time of the decision did not include a timeline for the Township's consideration of SLUP applications. Thus, it appears that, even absent the moratorium, the Township could have delayed a final decision on the SLUP application until after the 2018 amendments were enacted.[4]

That fact creates the third issue: whether a validly adopted amendment to the zoning ordinance should be given effect notwithstanding the Court's prior order finding the moratorium

---

[4] Certainly, Tuscola has never challenged this aspect of the zoning ordinance.

to be invalid. The Michigan cases cited above clearly stand for the proposition that valid amendments to a zoning ordinance "during the pendency of litigation" are to be given effect unless an exception applies. *Klyman*, 40 Mich. App. at 277. Tuscola argues, first, that these cases require that the law "*in effect at the time of decision*" be applied. Pl. Reply. Br. at 5 (emphasis in original). That reading of Michigan law misconstrues the cases, which stand for the broader proposition that "'if a zoning ordinance has been amended [after suit was filed] . . . a court will give effect to the amendment.'" *Grand/Sakwa*, 304 Mich. App. at 141 (quoting *Klyman*, 40 Mich. App. at 277–78) (brackets in original quote). At the time of that decision, the 2015 amendments were in effect, and so the SLUP application was subject to those standards. Now, the 2018 amendments are in effect, and so different standards apply. Given the unambiguous nature of Michigan law on this issue, the authority from West Virginia which Tuscola advances cannot be relied upon.[5]

   To summarize, Michigan law is clear that amendments to zoning ordinances which occur during litigation are generally given prospective effect. In the Court's March 13, 2018, opinion and order, the Court emphasized that "Tuscola is entitled to the procedures and consideration

---

[5] However, even if controlling Michigan authority did not exist, the Court is unpersuaded that *Bittenger* and *Bolivar* mandate the relief Tuscola now requests. *Bittenger* and *Bolivar* are distinguishable because the amended ordinance was enacted *during* the pendency of the moratorium, not after. The relief crafted by the West Virginia Courts was thus meant to place the plaintiffs in the position they would have been but for the unlawful moratorium. In *Bittenger*, the West Virginia Supreme Court held that the plaintiffs were entitled to have their applications "considered under the ordinances existing at that time and granted, *if the ordinances as written would permit*." *Bittinger*, 183 W. Va. at 315 (emphasis added). In *Bolivar*, the court found that the moratorium and amendments "essentially prevented" the plaintiffs from selling or developing their property, and so granted them leave to "develop and use the property *for any lawful purpose* as they might have done" prior to the void moratorium. *Bolivar*, 209 W. Va. 143–44 (emphasis added).

Here, however, the Township would have been free to withhold a decision on the SLUP application until amendments were enacted even absent the moratorium. In other words, because the 2015 ordinance as written did not require review of the SLUP application within a particular time period, the Township fulfilled its obligations to Tuscola under the 2015 amendments. Tuscola has never had any vested property rights in the SLUP application or its approval, and so Tuscola has not explained how it was "essentially prevented" from some benefit it was entitled to. This conclusion is underscored by the fact that one month passed between the voiding of the moratorium and the enactment of the 2018 amendments. The SLUP application was not considered during that period, and Tuscola has not argued that the Township was required by the 2015 ordinance to do so.

guaranteed by the ordinance." March 13, 2018, Op. & Order at 22. The implicit but inescapable corollary to that proposition is that the Township is likewise free to act in accordance with the ordinance and Michigan law, including amending the ordinance. Tuscola does not argue that the 2018 amendments were improperly enacted, nor has Tuscola directly challenged the 2015 or 2018 zoning ordinances as unconstitutional or otherwise unlawful. The March 13, 2018, opinion and order voided the moratorium and reminded the parties of their obligation to comply with the requirements of the zoning ordinance. Tuscola has not identified any failure on the Township's part to do so with respect to any iteration of the zoning ordinance. Thus, Tuscola has not only failed to identify any action by the Township which is inconsistent with the relief granted in the March 13, 2018, opinion and order, Tuscola has failed to identify any unlawful action by the Township after the moratorium was voided. The motion to enforce the Court's prior order will be denied.

## B.

The remaining question is the proper disposition of Tuscola's other pending claims. Tuscola's complaint advances four causes of action. The first count, alleging that the second moratorium violated the Michigan Zoning Enabling Act, was the subject of the Tuscola's November 2, 2017, motion for judgment on the pleadings. In Count One and in that motion, Tuscola sought an order declaring the moratorium void. *See* Compl. at 22 ("[T]he Second Moratorium is unlawful, and should be declared void."). On March 13, 2018, the Court issued an order finding the second moratorium void. March 13, 2018, Op. & Order at 23.

In Count Two, Tuscola argues that Board members violated the Michigan Open Meetings Act when they "met and deliberated in private at one or more times before the Special Meeting." Compl. at 22. Tuscola asserted that "the Second Moratorium should be invalidated." *Id.* at 23. In

Count Three, Tuscola argues "[t]he Second Moratorium, as applied to Tuscola Wind III's SLUP application, violates Tuscola Wind III's substantive due process rights under the United States Constitution [and] the Michigan Constitution." *Id.* at 25. Tuscola argues that "[t]his due process violation should be remedied by invalidating the unconstitutional Second Moratorium and by granting Tuscola Wind II the further relief it is requesting below." *Id.* In Count Four, Tuscola argues that the Township violated its procedural due process rights when "[t]he Board issued the Second Moratorium without following the procedural requirements set forth in the ZEA." *Id.* at 26. Tuscola further argued that it "has a recognized property right under the ZEA to have its SLUP Application approved because it complies with the conditions imposed under the Ordinance." *Id.* at 26. Tuscola contends that "[t]his due process violation should be remedied by invalidating the unconstitutional Second Moratorium." *Id.* at 27.

In the prayer for relief, the Complaint seeks similar remedies:

A. A declaratory judgment that the Second Moratorium is not a proper exercise of the Township's police power under Michigan law;

B. A declaratory judgment that the Second Moratorium is void because of the Board's violation of the OMA;

C. An injunction directing the Township to take such action on Tuscola Wind III's SLUP Application as is proper and required under the Ordinance as it existed as of the date of filing this Complaint;

D. A declaratory judgment that the Second Moratorium is void as applied on the grounds that it violates Tuscola Wind III's substantive due process rights under the United States Constitution, the Michigan Constitution, and the ZEA;

E. A declaratory judgment that the Second Moratorium is void as applied on the grounds that it violates Tuscola Wind III's procedural due process rights under the United States Constitution and the Michigan Constitution; and,

F. Award Tuscola Wind III costs, attorney fees, and such other relief this Court deems appropriate.

Compl. at 27–28.

Review of the Tuscola's alleged injuries and requested relief makes clear that all of Tuscola's remaining claims are moot. If a "case has . . . lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions or abstract propositions of law," the case must be dismissed as moot. *Hall v. Beals*, 396 U.S. 45, 48 (1969). *See also Calderon v. Moore*, 518 U.S. 149, 150 (1996) ("[A]n appeal should therefore be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant "any effectual relief whatever" in favor of the appellant," but the availability of even a "partial remedy" is sufficient to avoid mootness); *Operation King's Dream v. Connerly*, 501 F.3d 584, 592 (6th Cir. 2007) ("[B]ecause it is too late for us to grant the relief that the Plaintiffs requested in their complaint and litigated in the district court, any opinion that we issue addressing the merits of the their Voting Rights Act challenge would be advisory."); *Weingarten Nostat, Inc. v. Serv. Merch. Co.,* 396 F.3d 737, 742 (6th Cir. 2005) ("[A]n appeal must be dismissed as moot when, by virtue of intervening events, the court of appeals cannot fashion effective relief.").

In the briefing regarding the motions for summary judgment and to certify an interlocutory appeal, Tuscola spends considerable time explaining why it believes it will prevail on the merits of its Open Meetings Act and due process claims. But Tuscola provides only cursory attention to the question of remedy and the related question of whether its remaining claims are moot. In Tuscola's response in opposition to the Township's motion to certify an interlocutory appeal, Tuscola asserts:

> To be sure, TWIII's remaining claims seek similar relief to that sought in Count I. But these claims provide different legal avenues for obtaining such relief. In other words, even if the Sixth Circuit agreed with the Township and reversed this Court's decision on Count I, the reversal would not necessarily resolve the remaining claims, which involve different legal standards and protections.

Resp. Br. Mot. Cert. at 2, ECF No. 31.

In in its reply brief in support of its motion for summary judgment on Count Two, Tuscola merely states that "[t]he Township's argument that Count II is moot is specious. . . . Tuscola is entitled to a declaration that the Board violated the OMA notwithstanding this Court's decision on Count I." Reply Br. Mot. Part. Summ. J. at 2 n.1, ECF No. 41.

In its complaint, Tuscola seeks only injunctive relief. The requested injunctive relief has already been granted. The second moratorium has been determined to be void. Thus, Tuscola's assertions that the adoption of the second moratorium violated the Open Meetings Act or that the Township violated Tuscola's due process rights when it adopted the second moratorium are moot. A judgment in favor of Tuscola on any of those claims would change nothing about any parties' legal rights or expectations.

Two aspects of Tuscola's claims merit further discussion. First, Tuscola's due process claims could, perhaps be construed as alleging that its due process rights have been violated by the Township's failure to *consider* the SLUP application in a timely manner (or at all). *See* Compl. at 24; Pl. Resp. Mot. Summ. J. at 20–22. This argument goes nowhere because the complaint seeks only the invalidation of the moratorium and because ordering the Township to give the application the consideration already due under the ordinance would have no effect on extant legal obligations. Tuscola briefly argues that the Township's delay in considering the application violates its due process rights, but that argument requires a showing that Tuscola has been deprived of a property interest. As explained earlier, Tuscola has "no protected property interest in the" zoning application procedures themselves. *See Anderson*, 2014 WL 4087967, at *9 (quoting *Richardson*, 218 F.3d at 518). Given the Township's inherent discretion regarding whether to grant or deny a SLUP application, Tuscola cannot reasonably assert a right to its approval. *See EJS Properties, LLC*, 698 F.3d at 856 ("[A] party cannot possess a property interest in the receipt of a benefit when

the state's decision to award or withhold the benefit is wholly discretionary.") (quoting *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)).

Second, Tuscola's Open Meeting Act ("OMA") claim involves alleged violations both before and after the new Board members took office. But Tuscola's only requested remedy is invalidation of the second moratorium and, relatedly, a declaratory judgment that the second moratorium was enacted in violation of the OMA. Because the second moratorium has already been voided, Tuscola's OMA claim is moot except to the extent it seeks declaratory judgment. And the OMA does not provide for that relief. *See Speicher v. Columbia Twp. Bd. of Trustees*, 497 Mich. 125, 136 n.31 (2014) ("The Court of Appeals failed to identify the source of its authority to grant plaintiff declaratory relief in this case. *The OMA does not provide for such relief.* Nor is it clear that plaintiff was entitled to declaratory relief under MCR 2.605, the court rule governing declaratory judgments.") (emphasis added); *Citizens For A Better Algonac Cmty. Sch. v. Algonac Cmty. Sch.*, 317 Mich. App. 171, 180 (2016) ("[T]he Supreme Court's view is that a complaint seeking pure declaratory relief, as an independent remedy standing on its own, is unsustainable in regard to alleged OMA violations. Effectively, there was no legislative intent to create an OMA cause of action for declaratory relief."). To the extent Tuscola now argues that the OMA was violated by email communications between Board members *after* they took office, Tuscola has not specifically identified the related relief it requests. And, in any event, none of the post-swearing-in emails Tuscola relies upon include discourse *between* members. *See Markel v. Mackley*, 2016 Mich App. LEXIS 2004 at *11 (explaining that email communications can violate the OMA only if there is "some level of discourse on the issue of public policy that is being presented," which will typically involve a response to the email). Accordingly, Tuscola's remaining claims, in all their iterations, are either mooted by the invalidation or the second moratorium or noncognizable.

To the extent Tuscola seeks an injunction requiring the Township to review the SLUP application pursuant to the 2015 amendments, Tuscola has not demonstrated its entitlement to that relief for the reasons stated above. Tuscola's assertion that it can demonstrate that unlawfulness of the voided moratorium through other means merely frames an abstract, nonjusticiable legal dispute. "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). Accordingly, Tuscola's remaining claims are moot and will be dismissed without prejudice. Because final judgment will be entered concurrently with this order, there is no justification for an interlocutory appeal.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Tuscola's motion to enforce judgment, ECF No. 43, is **DENIED.**

It is further **ORDERED** that Counts Two, Three, and Four of Plaintiff Tuscola's complaint, ECF No. 1, are **DISMISSED without prejudice.**

It is further **ORDERED** that the cross motions for summary judgment, ECF Nos. 32, 33, and Defendant Township's motion to certify interlocutory appeal, ECF No. 30, are **DENIED as moot.**


Dated: July 27, 2018                                                  s/Thomas L. Ludington
                                                                              THOMAS L. LUDINGTON
                                                                              United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 27, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager